The next case this morning is 523-0254, People v. Gehrken. Arguing for the appellant is Jennifer Lassie. Arguing for the appellee is Claire Connolly. Each side will have 10 minutes for their argument. The appellant will also have 5 minutes for rebuttal. Please note, only the clerk of the court is permitted to record these proceedings today. Morning, counsel. As you have been advised, Justice Moore is not present. He will be listening to the oral argument. They're recording and viewing it and will, of course, participate as a panel member in the decision. Appellant, if you're ready, you may proceed. Thank you, Your Honor. My name is Jennifer Lassie with the Appellant Defender's Office and I represent the defendant appellant, Mr. Philip Gehrken. Due to time constraints, I'll be focusing on arguments 1 and 3 today. The state failed to prove beyond a reasonable doubt that Mr. Gehrken did not act in self-defense or, at the very least, this was second-degree murder. Mr. Gehrken was required to present some evidence of self-defense before the jury. And when arguing self-defense to justify the use of force, he was required to show some evidence that Cooper threatened force, that Mr. Gehrken was not the aggressor, that the danger of harm from Cooper was imminent, that the threatened force from Cooper was unlawful, and that Mr. Gehrken actually and subjectively believed a danger existed requiring the force that he used and that his beliefs were objectively reasonable. And the record shows that Mr. Gehrken provided some evidence on every element of self-defense and thus the state was required to prove beyond a reasonable doubt that he did not act in self-defense. And, of course, this becomes second-degree murder if the jury were to find that Mr. Gehrken's belief that he was in danger of his life was an unreasonable belief. And this is really important. Argument one is really important in context with argument three, counsel's failure to provide the jury with the 3.12 instruction, the Lynch instruction, on how to consider this evidence. And I would point out to the court, the state in its brief does not argue that trial counsel did not err in failing to submit that instruction to the jury. The state only argues that Mr. Gehrken wasn't prejudiced by counsel's failure to give that Lynch instruction to the jury. And the state argues that this wasn't critical to the defense. However, whether Mr. Gehrken acted in self-defense was the critical issue before jurors. The act of the shooting was not contested and the sole issue was whether Mr. Gehrken was justified in his use of force. And as Lynch tells us, the same deadly force that would be unreasonable with a peaceful person would be reasonable with a person like Mr. Cooper, who was known for his violent and aggressive actions. However, jurors were not given this critical instruction. IPI 3.12x would have explicitly informed them that they could consider all of Mr. Cooper's violent history when determining whether the state had proven that Mr. Gehrken was justified in using the force that he used. And so is the giving of that instruction mandatory? It's not mandatory, but it would have been an abuse of discretion if counsel had requested it and the trial court had denied his request. It absolutely would have been an abuse of discretion in this case. It was required. Well, it wasn't required. It wasn't mandatory to be given, but had counsel requested it, it would have been an abuse of discretion to deny that request. And again, it doesn't make sense for counsel to go to the lengths that he did in presenting this self-defense evidence and prior bad acts and history of Mr. Cooper and to not give that instruction. It simply does not make sense to give jurors all of this information that supports the theory of self-defense or second degree murder and then to not tell jurors how to use that information. And the real risk here is that jurors might have interpreted the information as the argues in its brief. So in the state's brief, the state argues, well, Mr. Cooper didn't present a threat on that day. There's nothing. He was just coming to the farm. He was a guest at the farm. But that's not the full picture. And there's a real risk that jurors might have just looked at the incidents at the farm in the few moments before the shooting and that jurors might not have considered all of this incredibly relevant evidence. And to review, multiple witnesses other than Mr. Gerken described Cooper as, and these are quotes, an extremely violent man, someone to stay away from, a very scary man with a track record a mile long, a violent, very angry man that would fight at the drop of a hat, a man most people were scared of. And counsel, the jury wasn't told all of that. They had all that evidence before them, weren't they? That's true. They were given the evidence, but they weren't told how to use it, which is a critical failure on counsel's part. So they just heard these bad acts, but there's a risk that jurors might have just looked at the incidents on the day of the shooting in that clip, that 30 second to a minute clip. And they may not have considered all of this because they weren't told how to use this instruction, which explicitly says they can use these prior incidents to determine whether Mr. Gerken was justified in using that force. Couldn't that instruction be viewed as maybe a limitation for the jury? Maybe it was trial strategy, maybe by not telling them what they could use it for, then therefore they could use it to let off the defendant because the victim was a bad guy. I don't think this could be trial strategy in this case because the instruction explicitly says, in part, if jurors determined that Cooper committed these acts, they may consider that evidence in deciding whether the state has proved beyond a reasonable doubt that the defendant was not justified in using the force he used. And this is really important, especially when we consider the Greg Talley stabbing. So when Cooper arrives to the farm at Mr. Gerken's farm, this is a rural property. Mr. Gerken is on his farm working. Mr. Gerken is known as a peaceful person. And Mr. Gerken personally knows that Cooper, just one year before, approached somebody, also Cooper approached him while Greg Talley was seated in a vehicle. Cooper began to argue with him briefly and then immediately reached into his pocket and began stabbing Greg Talley while Greg Talley was seated inside his vehicle, posing no threat to Mr. Cooper. There's no evidence that Talley escalated the situation. And that's very important in context because Mr. Gerken knew that when Cooper approached him with those two knives in Cooper's pocket. The instruction says for the jury, if you find that these acts were committed, right? Correct. All right. But wouldn't it be trial strategy? Because if you don't do the instruction, maybe the jury would be, you would infer that the jury had that evidence and had to find that it did occur because that was the evidence they were given. Well, I think no reasonable defense attorney faced with these facts would have failed to provide this instruction because I think jurors, there's no way jurors would not have concluded that these actions happened because it wasn't just Mr. Gerken that testified to the Greg Talley being stabbed inside of his vehicle. So jurors had good solid evidence about Cooper's violent history, but they did not know what to do with it. And this is simply a massive failure on counsel's part to not give this instruction. Could that video of this incident be reasonably construed to simply be an execution? I don't believe so, your honor. So when we watched the Cooper approaches, and again, this is knowing Cooper's history. I think when you know the history, which is why it's so important this instruction was given, when you know the history, it really explains how this escalated. So Cooper approaches and within 32 seconds, that first shot is fired. And before that first shot happens, Cooper repeatedly demands that Mr. Gerken get out, get out. Mr. Gerken says, I don't, he says, I just came out to mow. I don't want to fight you. And at no point does Cooper say, I'm not here to fight you. I just want to talk. He says, instead of using the phone to videotape, to record this, he could have used to call 911 and he could have, he could have driven the excavator away. Well, so that's, that's the arguments. I think that driving the large piece of equipment away is not a reasonable expectation for Mr. Gerken. There's no evidence that would have been a quick getaway. Again, Mr. Gerken is in a rural area on his own property doing nothing wrong when Cooper approaches demanding that he get out. And as far as calling the police, Mr. Gerken only had about 32 seconds before that shot was, that first shot was fired. Cooper approaches repeatedly demands he gets out and it's at that point, Mr. Gerken explains that Cooper was climbing up on the tracks with two knives in his pocket to get to him. And as you can see in the video, that very first shot is a straightforward shot. And Dr. Denton's testimony also says that the shot to the mouth appears to be a straightforward shot with a little bit of an upward trajectory. And I believe the evidence shows that was the shot that likely killed, uh, that was probably the first shot that the one that killed Cooper. Uh, I believe I'm out of time, unfortunately. All right. Any questions, Justice Vaughn? No questions at this time. Thank you. All right. Apple Lee. May it please the court, counsel. My name is Claire Connelly. I represent the people of the state of Illinois in this case. I'd first like to address the, um, jury instruction issue, and then I'll go back and address the, um, sufficiency of the evidence in this case. Now, what's important is the defendant does not say to any case holding that it constitutes ineffective assistance to counsel for failing to include this particular lynch instruction. And instead, counsel is asking this court to ignore the appropriate totality of the circumstances approach, which courts apply in this case. And this is what the Supreme Court has held as the appropriate approach in people versus Casillas. And that type of approach was utilized by the first district in people versus Bannon. I cite to that case in my brief, and the courts look at this totality of the circumstances and look at different factors. But in that case, the court held that it did not constitute error to failing to include that instruction. Now, you'll look at first whether or not the jury instructions otherwise fully and fairly covered the appropriate law in this case. The courts looked at two instructions, IPI 24-25.06, which outlines when a person is justified in the use of force against another. The court also looked at IPI 1.01. And the court looked at the inclusion of this and found that this jury in that case was otherwise fully and fairly instructed as to how they should consider this evidence. And most importantly, there was a reference to whether or not this was critical to the defense. And the court in that case found that the instruction, this particular instruction, was not so critical to the defense. The trial court also, I should say, this court can also look at the closing arguments that were made in this case. And I outlined in my brief, repeated statements that defense counsel made in his closing that directed the jury as to how the defense wanted the jury to consider this evidence. For instance- Weren't the juries told that opening statements, closing arguments are not evidence? They're not evidence, but it's a way and a matter for the juries to explain. And that happens all the time, how they should consider this evidence. That's exactly the role of a closing argument. And that was done in this case. You also have the overwhelming evidence in this case, and I'll get to that. So ultimately, the defendant has to show that the jury was misled and that the verdict prejudiced the defendant in this case. And there's absolutely no evidence to support it. And we submit that if this court once looks at people versus Bannon, they will find that the defendant was not prejudiced in this case, and he cannot establish that his trial counsel was ineffective in failing to include this jury instruction in this case. Now, as we're going back to the and looking at the evidence in this case, the most important piece of evidence in this case is that video. And you look at what the defendant's words were, immediately after he repeatedly fired shots at the defendant. The defendant said, and I'm going to, it's a little colorful language, so I'm going to try to clean it up a little bit. Lay there and bleed out, you son of a blank. I hope you pray to your maker. You ain't dead yet, M. Effer. Those are his words. Those are the words of someone who killed someone in first, committed a first degree murder, not someone who killed someone in self-defense. He didn't say anything about self-defense when he had the opportunity. You also have the fact that the victim never displayed a weapon in this case before the defendant shot him five times. What about those two knives? He had two knives secured inside his pocket. They were never brought out. You may say that you want to say that constitutes he's armed, but he never displayed them. And the defendant never testified that he even saw those two pocket knives inside the victim's pocket prior to the shooting in this case. The defendant also refers to the defendant lunging towards his left side. Well, on his left side was a phone case that contained a phone, a cell phone case. On his right side, he never reached towards the two knives that were secured inside his pocket at any point. And the defendant also contradicted himself on direct examination. He testified that he saw the victim reach towards his left side prior to the first shot. And then on cross-examination, he said he reached towards it after the first shot. There is no evidence that supports that the victim was in anywhere close proximity to the defendant at the time of the shooting. You have the words of the victim and the defendant leading up to this shooting. There is no exchange of words between the defendant and the victim showing that the victim was approaching the defendant. The defendant didn't say anything. Kevin, step back. Kevin, get back. There's nothing about the victim saying to the defendant that he was coming towards him. No words were exchanged. The only words were exchanged were the conversation in which the victim asked the defendant to get out. That's the only thing. There's no evidence of a close-range shooting found in the autopsy. There's no fingerprints found on the door of the excavator in this case. There's no evidence that there was any blood anywhere on that excavator at the time of the shooting. And counsel refers to the trajectory of the bullets. All of the evidence shows that the bullets in this case were ascending. They were not descending like the defendant wants to rely upon. When the victim appeared at the scene in this case, he merely told the defendant to get out of the excavator before the defendant repeatedly shot at him. The courts have found that verbal threats, and even if we're going to testify to prior to arriving at the scene, verbal threats are not enough to justify the use of deadly force. And while the defendant presented self-serving statements that the victim had previously threatened him, the victim never said anything to the defendant to make him reasonably believe that the danger of harm was imminent in this case. They weren't just prior threats. This victim had actually beaten the defendant, knocked his teeth out, hit him with a two-by-four in the head. Correct. And that had happened previously. But that goes to whether or not the defendant's conduct in this case and his fear was reasonable. And the jury in this case heard all of that evidence and rejected all of that evidence in finding the defendant guilty in this case. But again, once he gets to that scene, he doesn't do anything. The only thing that happened was the victim shows up at the scene and they have a short conversation. There's no further threats. The victim does not show any weapon, display any weapon showing that he was going to use any force before the defendant repeatedly shot him. And it's important that the court look at whether or not the fact that the defendant repeatedly shot the victim in this case, because the use of force cannot be justified once the victim has been disabled or disarmed. And you have the defendant's own words in that videotape showing that at the point in which he shot, that he repeatedly shot at the victim. And he knew when he said, you ain't dead yet, effort. He had already shot at the victim repeatedly. The victim had already been disabled or disarmed at that point, laying on the ground where the defendant chose to continue to shoot at the victim in this case. There were five bullets, five bullet wounds on the victim when he was during the autopsy. So the evidence in this case clearly does not support a claim of self-defense or that he had the unreasonable belief in the need for self-defense to justify a second degree murder conviction in this case. And therefore the people in this case respectfully request that this court affirm the defendant's conviction for first degree murder. Thank you. Given these substantial lynch evidence, how could it be any trial strategy for any defense attorney not to request 3.12? I did not argue trial strategy in this case. And I understand that you talked about that. I don't really, it's more trial strategy in this case. But what the courts have really focused on is the prejudice prong of ineffective assistance of counsel. And clearly if once this court looks at people versus Bannon, and it can follow that in outlining what's appropriate in this case. And I don't think that what the defense wants to do is have this court focus on how much evidence was presented. And the courts don't focus on how much lynch evidence. There was a substantial amount of lynch evidence that was introduced in this case. But it's just whether or not lynch evidence was introduced. It's not the volume. It's just the fact that it was introduced. So I don't think the volume of evidence is a factor for this court to consider. Thank you, counsel. Justice Vaughn, any questions? Just to make sure I understand your argument on the jury instructions, you concede that trial counsel is deficient in failing to ask for the instruction. You just say they can't show prejudice because the totality of the circumstances, the totality of the other jury instructions and the evidence, there's no prejudice. As well as the counsel's arguments. Counsel's arguments pointed the jury to how they want to consider this. So as I said in my brief, I didn't argue the deficiency prong. I argued the prejudice prong. Because that's what the courts in these cases have focused on is the prejudice prong in these types of cases. Also for clarification, you mentioned the Bannon case several times. Is it Brannon or Bannon? Bannon, I believe. Let me make sure. Yeah, Bannon is a first district case. I cited to it in my brief. Okay. Thank you. Rebeto? Yes, your honor. I believe it's actually Brannon with an R. But first, there's several points I have to address. Brannon is entirely distinct there. In Brannon, we have a victim who doesn't really seem to be much of a threat at all. There's not much prior interaction with defendant Brannon before the shooting. And the victim in Brannon was shot in the back and in the back of his head as he was attempting to get away from Brannon. That case is really distinct based on the amount of Lynch evidence that was presented, which was almost nothing. I think it was like one prior conversation with a minor threat. And also the circumstances and facts surrounding that case. It really is just a very distinct case. And I believe your honors in looking at self-defense and second-degree murder cases would be hard pressed to find a case with this much Lynch evidence. I mean, to review, Mr. Cooper stabbed Glenn Strode, resulting in paralysis. Just one year before this incident, he engaged in an almost identical stabbing of Greg Talley after a brief argument. He struck Herman Woodley after an argument and got irate when Woodley called police. He threatened to kill Stacey Pfeiffer. He hit Mr. Gerken in the head with a two-by-four. He hit Mr. Gerken in the eye after an argument. He beat Scott O'Loughlin after an argument. He attacked a co-worker for simply smarting off. He attacked a man who just stabbed Mr. Gerken's teeth previously. And he attacked Greg Talley. Precisely, though, doesn't the fact that there's so much Lynch evidence, doesn't that almost work against your client? Because the jury was aware of almost all of this information and still found self-defense did not apply here. Well, and that's why that 3.12x instruction was so critical, because the jury may have acted as the state now asked this court to act. The state says, here, you know, all he did was show up and say, get out. There wasn't an argument. And yes, he had knives in his pocket, but he didn't pull them out. And the state urges this court now to adopt that view. Let's just look at this narrow window right around the shooting. And the jurors may have done what the state is asking this court to do now. They may have looked at that narrow window surrounding the shooting instead of using all of this evidence to determine whether Mr. Gerken was justified. And that's why this really was a massive failure on a critical point. Mr. Gerken was known as a peaceful person. And it's really important. The state argues, you know, Cooper didn't make any threats or show any weapons when he got here this day. But Cooper, in text messages to other people, said, hey, if you've got stuff out on the farm, you better get it. I'm going to burn the farm down. That's corroborated by Cooper's own phone text messages. And Cooper also texted in the exhibits, you'll see he texted Mr. Gerken and saying, hey, you know, I'm a violent person and you're still acting this way. And he told Mr. Gerken, I'm going to knock the rest of your teeth out on this date, according to Mr. Gerken's testimony. So the state argues, you know, that the words Mr. Gerken used after the shooting are evidence of first degree murder. And I would submit that they are not. The first, I believe if you watch the video, the first five shots occur before these statements are ever made. And yes, Mr. Gerken's words are harsh. But you can tell the man is nervous. You hear him breathing heavy. He starts that excavator, I believe four times, starts it, turns it off, starts it, turns it off. It's clear he doesn't know what to do. And he's breathing hard. And the state says that Mr. Gerken didn't say anything about acting in self-defense. That's not true. Immediately after the shooting, Mr. Gerken told the three people that showed up, and I believe Trooper Moulding, that he shot Cooper because he thought he was going to whip him. He thought he was going to beat him. And he thought he was going to kill him. His statements are consistent. And he says he did it because it was self-defense. And with respect to the state's argument about this not being a close contact gunshot wound, Dr. Scott Denton does say that the cause of the death was a gunshot wound to the mouth. And I would urge this court to look at that first shot that was fired, which was a straightforward shot, which supports Mr. Gerken's testimony that Cooper was climbing into the excavator. As far as close firing, Denton explained that close firing can occur when the muzzle of the but Denton doesn't testify that whether close firing is also firing from a foot or two away. This could have been a few inches. I realize I'm out of time. Unless your honors have questions, we would respectfully request that you grant the relief requested in the briefing. Any further questions, Justice Funn? Statements the defendant made to his friends, the three people that showed up, one of those testified that the victim was trying to drag him out of the excavator. He said he got a hold on me. He was trying to pull me out. But that wasn't true. You can tell from the video that that didn't actually happen. That's true. I believe that's Holt. And he does clarify on cross that he can't remember exactly what Mr. Gerken told him, but that it was something like Cooper was trying that Cooper was trying to get up into the excavator to get him. So he does say that initially on direct, but then on cross, he says, I don't believe he actually said he grabbed a hold of him, but that he was trying to. So, and I believe that's, I think that's clarified in the opening brief about that cross examination. But he does clarify, yeah, he didn't actually say he got a hold of him, but that's what he was trying to do, which would be consistent with claim that he's climbing up onto the front of the excavator to get in. Right. Thank you. Thank you. All right. Thank you, Council. We will take the matter under advisement and issue a ruling in due course.